Mousseau v. Crum. And you're back again. I'm back. Why don't you pick up where you left off? I will. Thank you. You've got a lot more time to talk. The state can't take the position, well, sorry, can we put you on a payment plan or just deny the claim altogether because you've exceeded what we've got in our custodial trust account? No, they have to retransfer the money from the general revenue fund into the custodial trust account and write the check and pay the claim. That is the way it works in California. That is the way it works in Alaska. That is the way it works in Arizona. They're just putting the money to use, which is fine, but they've got to retransfer it. I mean, California lays that out explicitly, the retransfer. And I think the argument on the other side is there is no explicit statutory language. But I did have a question about that. I mean, if that $100,000 or whatever the amount is in Alaska is depleted, does that mean that a person, that the state would not have to pay off a claim anymore? It can't mean that. And I don't think they've taken the position that it means that. Of course they have to retransfer. I acknowledge that it is explicit in the California system, but I would argue it's implicit. It has to work that way. They can't just say, sorry, your claim exceeds what's in our custodial trust account at the moment, so we're not going to pay your claim. Nor can they say, well, yes, you have a claim for $200,000, so we'll pay you $100,000 this year and then we'll pay you $100,000 next year. It just doesn't work like that. That doesn't make any sense. And I don't think that's the statutory scheme that they're arguing for. I don't think they took that position. I don't think they already have. So I'm wondering what we're talking about. Because I think that's the logical extension of saying that there is no custodial trust relationship, and that's some distinction between Alaska and Arizona and California. There is no distinction. The system works precisely the same. I get it's explicit, but the system works the same. And the custodial relationship, it is, in fact, a bailment. They're taking possession of private citizens' property. They owe a duty to get it back. So if it is a custodial relationship, then wouldn't you agree that it can't be a taking under the line of cases? I mean, Taylor says that almost explicitly. If the state is holding the property in trust for someone else, then it hasn't been taken. I mean, I realize you may be raising claims in the alternative, but, you know, I'm thinking you prefer the custodial relationship side of things. I do, and, you know, my intent is to argue the due process. The taking is the alternative, which if they're going to say that they just took title to it and sovereign immunity applies and they don't have to give it back, then I think we do walk right into the Fifth Amendment, and there is a takings problem. We should avoid all of that by saying you have a custodial relationship, you have a duty to give pre-deprivation notice, and then there's no taking, and we can avoid that. But I do think you have a problem with the 7-Up case if it is a taking because that's, you know, my reading of that case is it's clear that you can't file that claim in federal court because of sovereign immunity. I don't know if you have a response to that. So my response to that, and, again, this comes back to what's happening to title. I think it's clear that the state is taking custody and not title. Now, I get that Arizona just said they were taking title, but if it really is true, as I think the statute says, they're just taking custody and not title, then there is this issue of sovereign immunity that shouldn't apply. As the Taylor cases make clear, I think, that if it's our property, we have a right to get it back. We're not asking the state to part with any of its property. It's our property. We're just asking for that back. And so if the sovereign immunity precludes my clients from getting their own property back, then I think we have a takings problem. And so they're intertwined in that manner. Related to that point, is it true that in both the Arizona and the Alaska case, the plaintiffs are not trying to get interest or any other relief other than just whatever the amount was that is abandoned or deemed abandoned? That is true. That is true. And to that point, this carries over from Arizona, but in both places, we are contesting. It's just not really an issue before the court today, but we do allege in our complaint that the three years is – well, we allege that our client's property was never abandoned and was never – shouldn't have been presumed abandoned, and had we gotten notice, we would have claimed it. So – and we do question the three years as an unconstitutionally short period of time, but I think that's a question for another day. I just wanted to be clear that we weren't condoning that part of the system. Well, on that point, Alaska is different procedurally because the district court only ruled on standing. That's right. So there seems to be many questions that have been left for another day. I think that's exactly right. And that's why I'm not – we put more in our brief than I think really needs to be decided, I'll confess, because we didn't know exactly which direction the state was going. And, in fact, in some states – some instances, they didn't really support the decision of the district court and kind of went a different direction. So we covered the spectrum. But I think the deprivation question is really all this court needs to resolve because if it is, in fact, a deprivation, then, of course, due process attaches to that. And if there's pre-deprivation notice, then we can move forward. And I think that is the issue of – I'm just – I'm still back to that. What is the deprivation if it moves from here to there and the constitutionality of having these statutes is not on the table? So there's a couple of issues there. One is it's – what I think the district court has done and the appellees argue in support of is they're conflating any distinction between a state actor and a private actor. And the issues that are – Let's just kind of unpack it all. So you're saying the deprivation is that moving it from the bank to the state is the deprivation. Yes. And how do you square that position with Anderson? So because Anderson says based on prior notice, it was built into the Kentucky statute that there was notice before the bank turned over the property to the state of Kentucky. That's what we're asking for here, that same notice that was in the Kentucky system that was upheld. Your notice that you want is not the bank but the state. Is that right?  And so, again, your position is notice by the bank, which is operating under a state statute, and then the money is going into this pot in the sky, is insufficient simply as a matter of form because it didn't come from the state. Correct. And that's the Taylor case. I'll quote it. Finally, the holder's obligation to provide notice did not satisfy the obligation of the state itself to give notice. That's what this Court has held. But, you know, all these due process cases talk about notice reasonably calculated under all the circumstances, which suggests a more fact-specific inquiry for each thing. So what is it about the holder providing individualized notice that's not reasonably calculated? So a couple things. One, I think, to your point is we need to get more into that. We didn't challenge the former notice because we'd never seen it. We didn't get it. We don't know about the holder's notice because we don't think there was a notice, and the record in Arizona, I think, reflects that the holder didn't give notice, or at least there's no proof of it. But I think the common-sense answer to that is to suggest that a notice in the mail, an envelope from the cable company is the same as a notice, an envelope from the state, that they're equally likely to get opened, I think is a fallacy that makes no sense. That is not very convincing to me. If so, let's say you got notice from the bank, you opened it, but you never got notice from the state, your argument would be, well, I never got that state notice with the nice little seal on the return, and therefore the notice is insufficient, if we accept your argument. I think there's good reason. Well, first of all, my argument, I think that was the common-sense answer, which I think it's far more likely to get opened rather than assume junk mail of, oh, this is the state. But, look, the answer to the core of our position is that private actors don't have constitutional obligations. The state does. A state actor is different than the private actor. But can't the statute can, in effect, impose requirements on a private actor, right? So you didn't really answer my question. If you got notice from the bank but you didn't get it from the state, your position is that there is a due process violation. Is that right? Yes, that is correct. Okay. Just wanted to understand. All right. I just have a little bit of time I'd like to reserve for rebuttal. Okay. Thank you. Good morning. May it please the Court. My name is Laura Fox, and I represent the state of Alaska. I'm going to focus my short time on Article III standing because that's how the district court ruled, and it's jurisdictional, but I'd be happy to answer questions on the merits as an alternative basis for affirmance. As the Supreme Court summarized the law in TransUnion v. Ramirez, quote, no concrete harm, no standing. Here we have no concrete harm, so we have no standing. These plaintiffs haven't alleged that they've lost any money due to the act or that there's any chance that they're going to lose money due to the act. They haven't even alleged that they've been inconvenienced due to the act or that they'll ever be inconvenienced due to the act. On the contrary, the Unclaimed Property Act actually helped them learn about money that they forgot about and preserved their ability to access to it, whereas otherwise it might have been lost to them forever. And to use a travel-related analogy, it's as if they forgot a suitcase under a chair at the airport and somebody took it to the lost and found, as forecasted by signs telling everyone unattended property is going to be brought to the lost and found, and then instead of just going to the lost and found and claiming it, they sued the lost and found just for touching it. That's not a concrete harm sufficient for Article III standing. The Unclaimed Property Act helped them. It didn't harm them in any way. What about the loss of the possessory interest? To go back to my earlier hypothetical, if money gets moved from a bank account that I have, the holder transfers it over to the state of Alaska without my knowing about it, let's assume notice is inadequate, why isn't, even if it's held in custody by the state, why isn't the loss of my possessory interest not a concrete injury? Well, these plaintiffs weren't actually possessing their money. If they had been in any sense using or possessing their money in any meaningful sense before the state took custody, that would be a different situation, and you might be able to imagine a different hypothetical plaintiff or a different hypothetical law and the interaction of those things creating standing. That's a really, it seems like that could lead to unintended consequences to say that every time that we have money held by a bank or some third party that we're not possessing it. I mean, how does that fit within just general views of property law? Well, these plaintiffs haven't even alleged that they had any idea that this money existed at this point. So the state has set up this reasonable system where it's publicly noticed in the law. I get that, but I don't understand the argument that there was, that the person who we're all saying owned the money or whatever the property is here, it was money, I think, doesn't have a possessory interest because it's being held in an account by another party. Well, what they have is the right to claim it from that third party, and they do have that right. They have the ownership interest. They have the interest in the value. They have the interest in claiming it from that third party, but they still have that here that hasn't been taken from them. All that's been taken from them is the ability to leave it forever in a dormant account with a third-party holder without interacting with it, which is a right that they don't have under the reasonable system that the state set up. So the state set up this system that says, you know, you can't leave your money forever without touching it in a third-party account. Different periods for different kinds of property, depending on how often we would expect you to be touching it. For example, like a retirement account, you never touch it, obviously, until you retire. The period for abandonment doesn't begin until you would be expected to retire and have mandatory distribution. So the state set up this system. It says you can't leave your suitcase under the chair forever and expect it to be there when you come back. It's going to go to the lost and found. You can still come claim it. So the only thing that's been taken from them is something that they don't have a right to under the way the law's been set up. Let me give you a clear analogy, because what I think the claim that they're making, that I finally divined, I think, from counsel, is the notice by the bank is insufficient because it's not by the state. What is your response to that? Well, before we even get to that, we have two analytical hurdles, which are standing and then is there a deprivation, right? So before we even get to whether the notice is sufficient, whether it had to come from the state or from the holder, we still have to say, do they have a concrete harm or a concrete risk of harm to their concrete interest? They don't. And then, do they have a deprivation? And no, as I was just explaining, they don't. And I would also want to say that standing— Well, they would say that there's two parts to the due process, and that they're really alleging the first part, which is incomplete notice, and they're not alleging an actual taking. Well, they are, but let's just say that it's not a taking, but they're really only alleging the notice issue. So how does that get analyzed in the standing rubric? Well, standing doesn't collapse entirely into the merits when it comes to a due process claim, such that all you have to do is— you know, the court has to get to the final merits of the due process claim to decide if somebody has standing, or that all you have to do to have standing is just bring a due process claim. So standing is a substantively distinct hurdle before we get to the merits. But I think the hurdle for you is in Taylor 2, the panel there did describe the concrete injury as property being eschated by the State without notice. You know, I mean, it's directly into the line that I read earlier. Well, what the court said when it was looking at standing, which was not — it was only discussed in one of the earlier cases and not throughout the rest of the case and I think can't be divorced from the overall context. What the court said is they've — they clearly have concrete harm. They've lost their securities to a sheet, is what the court said. I mean, because in that case, as soon as the stocks transferred, California sold them and the plaintiffs lost millions of dollars. I think that was obviously a concrete harm. And the whole rest of the case as far as standing has to be viewed in the light of the consequence of transferring these stocks to California was that they were going to be immediately sold, so then you weren't going to have stocks anymore. And these particular plaintiffs, one of them, her shares were lost entirely. She lost all of her money. The other plaintiff lost millions of dollars. So here we have nothing like that. And so, you know, these plaintiffs haven't lost ownership of their money. They haven't lost value of their money. They haven't lost any sort of access to their money. They have the same access to their money that they had before. And you could definitely imagine, you know, hypothetical different set of laws, hypothetical different plaintiffs who were in some way inconvenienced by, you know, if the State, for example, was going in and taking money out of somebody's checking account that they're using and creating some risk that they're not going to be able to pay their bills, that person would have standing, but that's not how these laws operate, and that's not what these plaintiffs have alleged. They haven't even been able to pay their bills. Sotomayor, you're saying it has to have some kind of concrete loss. That's your bottom line, right? Well, the standing depends on the facts that the plaintiffs have alleged about themselves because it has to be their standing. And it's always going to depend on their specific facts. So then in these series of unclaimed property laws, it may well depend on the type of property that has cheated to the State, right? And then you look at the individual claimed loss or no loss, right? Right. I mean, well, every plaintiff, it's going to depend on their facts and, you know, whether they have standing, just as in every case. And here, I mean, these plaintiffs, like I said, haven't even alleged that they knew that this money even existed, much less, I mean, they haven't even alleged, hey, I would have preferred that, like Mr. Musso, for example, hasn't even alleged I would have preferred that my money had stayed with my landlord from back in 2017. I wish my landlord from 2017 was still hanging on to my $25 to $50, and that would be my personal preference rather than it going to the State. They haven't even made that allegation, much less an allegation about how the money transferring to the State, where they can still get it on request, actually causes them concrete harm. But, I mean, I don't think the district court was relying on what you're arguing here, that they didn't know about the money being. So if someone knew about their money in their account but wasn't intending to do anything with that money, just to keep it there, and then it gets issued under the unclean property, would that change your analysis of whether they're standing in that case? Well, I mean, what I'm saying is that we might be able to find. You might get closer, but they're not there. And the district court said, you know, these plaintiffs didn't allege facts that are concrete harm. I mean, I'm just saying, you know, here's some things they didn't allege. Here's some other things they didn't allege. You know, there's other things that they could have alleged that could have hypothetically potentially been concrete harm. And until we have a plaintiff that actually suffers concrete harm, I mean, Alaska certainly hopes that no plaintiffs are going to suffer concrete harm that would give them standing to challenge this law, because we think the law is set up reasonably so that it's not going to be harming people. But at the point that somebody has concrete harm, that hypothetical plaintiff might have standing. But these plaintiffs don't, so they're the wrong plaintiffs. And it's not enough just to point out hypothetical potential constitutional problems with the statutory scheme. You have to show how that statutory scheme is actually causing you personally concrete harm. Otherwise, you're the wrong plaintiff to be bringing that case. And these plaintiffs haven't alleged anything that could conceivably be concrete harm or risk of harm to their own interests. And it's not enough just that their money is involved. Like, cases like Spokio and Navajo Nation say it's not enough to have your concrete interests involved. You have to allege actual harm or risk of harm to those interests. And they haven't been deprived of anything that constitutes a property right or even a concrete interest under Alaska law. So the Court should affirm based on lack of standing. Thank you. Thank you, counsel. All right. Mr. Paul, we'll give you a full minute. Thank you, Your Honor. That's all I need. So I think the – back to the standing question. The Carey v. Pifus case from the Supreme Court resolves all of that. What the Court made clear there is the lack of monetary injury is not a barrier to standing to assert a due process claim. Carey does that, and then this Court went further in Vann v. LLR and said even a temporary loss of use of your property is sufficient to confer standing. That's an injury in Vann. But what about counsel's argument about property you don't even know exists? I guess I would be curious to know what are the specific allegations here that would bring it closer into the realm of feeling that deprivation. I think the answer to that is it's my client's money. So, you know, they paid that money and they were due a refund. Whether they knew about the refund or not, again, shouldn't be the crux on which we hinge their standing to get that back. I think it still conflates private actor and state actor. There is a distinction. The state actor owes a duty that the private actor doesn't owe. And so, yes, you can delegate some of those things, but this case, this Court has made clear that you can't delegate the due process. Any other questions? All right, Mr. Paul. Thank you. Thank you very much. I think counsel in both of these cases, Garza was already submitted. Now Musso is submitted.
judges: McKEOWN, FORREST, SANCHEZ